```
 1              THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION

 3   D.H. PACE COMPANY, INC.,        )
                                     )
 4               Plaintiff,          )
                  v.                 )  CIVIL ACTION
 5                                   )  FILE NO. 1:22-CV-01005-SEG
     MATTHEW JOHNSON et al.,         )
 6                                   )
                 Defendants.         )  TELEPHONE CONFERENCE
 7   _____)

 8   -----------------------------------------------------------

 9          BEFORE THE HONORABLE SARAH E. GERAGHTY
                  TRANSCRIPT OF PROCEEDINGS
10                     JUNE 6, 2022

11   -----------------------------------------------------------
     APPEARANCES:
12
     For the Plaintiff:          STEPHEN T. LaBRIOLA
13                               ETHAN M. KNOTT
                                 SHARIKA ZUTSHI
14                               Attorneys at Law
                                 Fellows LaBriola LLP
15                               233 Peachtree Street NE
                                 Suite 2400
16                               Atlanta, Georgia  30303

17   For the Defendant:          WAYNE M. CARTWRIGHT, II
                                 DAVID A. ROBERTS
18                               Hall, Gilligan, Roberts & Shanlever
                                 3340 Peachtree Road NE
19                               Suite 1900
                                 Atlanta, Georgia  30326
20

21        Proceedings recorded by mechanical stenography
            and computer-aided transcript produced by
22
                 WYNETTE C. BLATHERS, RMR, CRR
23                   Official Court Reporter
                     1714 U.S. Courthouse
24                  75 Ted Turner Drive, SW
                    Atlanta, Georgia  30303
25                     (404) 215-1547
```

```
 1                    Monday Afternoon Session

 2                        June 6, 2022

 3                         3:30 p.m.

 4                          -  -  -

 5                    P R O C E E D I N G S

 6           COURTROOM DEPUTY:  Thank you.  Looks like we have

 7   everybody on the call.  I want to thank everybody for joining

 8   this telephone conference this afternoon for civil action D.H.

 9   Pace Company, Inc. v. Johnson et al., Case No. 22-CV-1005.

10   Attorneys for the plaintiff, who will be doing the majority of

11   your speaking today?

12           MR. LaBRIOLA:  I will.  This is Steve LaBriola.

13           COURTROOM DEPUTY:  Thank you, sir.  And for the

14   defendants?

15           MR. CARTWRIGHT:  It will be Mr. Cartwright today.

16           COURTROOM DEPUTY:  Thank you both.  So before we

17   begin I just want to remind counsel please announce your name

18   before speaking so the record is clear.  Plaintiffs, are you

19   ready to begin?

20           MR. LaBRIOLA:  Yeah.

21           COURTROOM DEPUTY:  Defendants?

22           MR. CARTWRIGHT:  Yes.

23           COURTROOM DEPUTY:  Defendants?

24           MR. CARTWRIGHT:  Yes.

25           MR. ROBERTS:  Yes.  Sorry.  Yes.
```

1          COURTROOM DEPUTY:  You're now on the line with Judge

2    Geraghty.

3          THE COURT:  Good afternoon, counsel.  This is Sarah

4    Geraghty.  It's good to meet you all by telephone.

5          You'll have seen that a TRO was issued on Friday.  At

6    the end of that order, I invited the parties to let us know if

7    you wanted a conference to discuss scheduling and discovery.

8    But as I thought about it over the weekend and about the

9    expedited discovery request in particular, it seemed more

10   prudent to affirmatively schedule a call so that everyone can

11   be on the same page about the things that will need to be done

12   in advance of what I understand will be a preliminary

13   injunction hearing.

14         I understand from the most recent filings that

15   plaintiff would like a preliminary injunction hearing within

16   14 days of the date of a TRO.  We can accommodate that

17   schedule.  I further understand that lead counsel for the

18   plaintiff has a trip to visit his son who is stationed

19   overseas, and we will certainly accommodate that request.

20         I believe there's good cause here to permit expedited

21   discovery in this case, and I'll issue a written order to that

22   effect by tomorrow.  But I wanted to seek the parties' input

23   in a few areas.  I've read plaintiff's notice, Document 55,

24   and defendants' response.  And before I go on I wanted to ask

25   each side, starting with Mr. LaBriola, whether there have been

1    further discussions since last week about written discovery,

2    the ESI Protocol, the requested depositions or anything else I

3    should know about before we get into the specifics of the

4    discovery -- expedited discovery request.  And so just put

5    another way, it would be helpful for me to know if the parties

6    still seek a ruling on those three topics, depositions,

7    written discovery, and Section 7(f) of the ESI Protocol.

8         I have one in mind for each, but I don't want to

9    impose if you all have been able to agree.  So, Mr. LaBriola,

10   if I may hear from you, please.

11        MR. LaBRIOLA:  Sure.  Thank you, Judge, and pardon my

12   voice.  I am now sounding probably a little head congested.  I

13   learned on Friday that I had contracted Covid.  I've been

14   double vaccinated and double boosted, but nevertheless it

15   found me.  So if I sound a little bit --

16        THE COURT:  I'm sorry to interrupt, and I'm sorry to

17   hear that, Mr. LaBriola.  I have just been through it myself,

18   and it's no fun.

19        MR. LaBRIOLA:  No, it's not, but I'm glad that I was

20   vaccinated.  It's been mild symptoms so notwithstanding how I

21   sound.

22        Judge, we have had discussions.  Mr. Cartwright and I

23   have probably had four or five discussions today, and we have

24   had discussions back and forth with our clients on several

25   issues, including settlements.  And we are trying to see if

1  there are advancements that can be made in that regard.

2         But we have also discussed the ESI, and we have

3  recently sent to him a proposed supplement to ESI.  The ESI

4  Protocol that you had received dealt with expedited discovery

5  of looking only at confidential information.  From the Court's

6  order on Friday, it certainly appears to us that should there

7  be additional discovery as it relates to Liberty's conduct

8  prior to -- well, I guess just Liberty's conduct at large,

9  that that may have relevance as to the extension of a

10  preliminary injunction as it might relate to Liberty.  And so

11  we had sent over a proposed ESI Protocol.

12         I just had a conversation with Mr. Wainwright (sic)

13  about 10 minutes before we got on the call.  And we had come

14  to a point where we thought perhaps we could reach some

15  resolution on those final points, but we needed to run it past

16  our clients and just didn't have enough time before getting on

17  the call here.  And I would just say from a big picture

18  standpoint, I don't think the defense has objection to

19  expedited discovery.  It's just the nature of what expedited

20  means because it starts putting a lot of pressure on all of us

21  to try and do things and do it competently, and that's really,

22  I think, the thrust and the difficulty here.

23         There also was some discussion about would it be

24  possible to enter some form of order that could extend the TRO

25  so that the parties could engage in more thoughtful discovery

1   and then hold a hearing afterwards, and I think that the

2   biggest hurdle is in the interpretation perhaps of your

3   Honor's order.  The focus on acquired and interest in it has

4   led to the thoughts on the defense side that if Mr. Johnson

5   simply gives up his ownership interest, then he can continue

6   to work for Liberty.  And, of course, that gives some real

7   consternation to my clients, and that specific statement, you

8   know, is not set forth in the Court's order.

9         And so that's one of the issues that we're looking at

10  is, well, that makes it very difficult for my client to say

11  yes to if indeed that's the position that the defense is

12  planning to take.

13        So at large that's kind of the big picture.  We

14  should have a supplement for the Court on ESI.  The nature of

15  the supplement is really just to deal with the discovery ESI

16  as it relates to all of the issues in the case, not just the

17  confidential information.

18        MR. CARTWRIGHT:  Your Honor, if I may -- this is

19  Mr. Cartwright.

20        THE COURT:  Yes.  Please do.

21        MR. CARTWRIGHT:  -- whenever Mr. LaBriola is done?

22        THE COURT:  Yes.  Thank you, Mr. LaBriola.

23  Mr. Cartwright?

24        MR. CARTWRIGHT:  Yes, your Honor.  Just to kind of

25  follow up on what Mr. LaBriola said, you know, and as I hope

1   that we've made clear in our response brief and as we intended

2   to make clear and did, I think, at the additional hearing,

3   we're not opposed in theory to some form of expedited

4   discovery, particularly as it relates to the trade secret

5   information.  We've been trying to be as open as possible with

6   that.

7           I was actually at my client's facility this morning

8   where we began imaging their -- where a tech paid by -- tech,

9   you know, retained by D.H. Pace was there starting the imaging

10  process of all of the devices and accounts and will continue

11  to work through that with them.  We're not trying to slow it,

12  but there is obviously pause on our part of trying to be

13  competent when we are reviewing documents in what expedited

14  discovery means.

15          And I second what Mr. LaBriola said about, you know,

16  finding a way that maybe makes the most sense for both parties

17  to extend the TRO as it's entered.  I would only slightly take

18  umbrage with his suggestion that this is -- that our

19  interpretation of whether Mr. Johnson can continue to work is

20  our interpretation alone when it is actually the argument that

21  they made to this Court when they said that any other --

22  would, quote, be an illogical interpretation that ignores the

23  plain meaning of the provision.  Simply the covenant prohibits

24  Johnson from owning a percentage of a direct competitor

25  regardless of the title bestowed upon them.  That was their

1  language in their brief on page 37.

2          COURT REPORTER:  Can he speak a little slower so I

3  can -- his words are cutting off.

4          THE COURT:  Excuse me, Mr. Cartwright.  I apologize

5  for interrupting.  We are having a bit of interference from a

6  storm here, and our court reporter has asked if you would be

7  so kind as to speak just a little more slowly so she can take

8  down everything.

9          MR. CARTWRIGHT:  And I'm not sure it does not

10 surprise your Honor or anyone else on this call that's not the

11 first time I've been asked to speak a little slower during a

12 hearing.  I will do my best, and my apologizes for prior

13 issues.

14         THE COURT:  No problem, no problem.  Was there

15 anything else that you wanted to add, Mr. Cartwright?

16         MR. CARTWRIGHT:  I don't believe so, other than to

17 say that, you know, we are very willing to be as reasonable as

18 we can be in conducting expedited discovery and particularly

19 as it relates to ESI.  We're trying to be as open and as

20 cooperative as we possibly can be.  We are cautious of, you

21 know, 24-hour type deadlines just because that places a

22 practical issue on whether we can competently review documents

23 and produce and serve our client's interest.  And that

24 certainly is more on us than them, and so we are cognitive of

25 those types of turnaround.  But, generally speaking, we're

1   more than open to engage cooperatively in discovery at their

2   quickened pace.

3         THE COURT:  Okay.  Understood.  Thank you both.  So I

4   had been working on an assumption that the plaintiff wanted to

5   have the preliminary injunction hearing within 14 days.  I am

6   now hearing from both sides, as I understand it, that you are

7   open to -- I'm sorry?  Did someone say something?  No.  Okay.

8   I'm now understanding that both sides are open to extending

9   the TRO and to possibly having the hearing at a later time.

10   I'm open to that too if that's what suits the parties' needs.

11         It does sound like it makes sense for me to go

12   through some of these requests for expedited discovery, and so

13   I'll do that now starting with the request for four

14   depositions.  And if you all will feel free to chime in and

15   let me know if there are things that you've already talked

16   about that are moot.  But as I understand it, we have four

17   depositions on the table, the two Mr. Johnsons, Mr. Hussein,

18   and a bank representative.  And there was a request by

19   plaintiff that these depositions occur between June 9th and

20   June 15th.

21         I am going to ask the parties to confer and to find a

22   mutually convenient time on or before June 15th for the

23   depositions of Craig Johnson, Matthew Johnson, and

24   Mr. Hussein.  I think the efficient resolution of the

25   preliminary injunction proceeding and the case would be served

1  by depositions that permit inquiry into the breach of contract

2  and the trade secret and the tortious interference claims.

3  And it seems to me that expedited discovery and depositions in

4  particular will facilitate the presentation of evidence at

5  this upcoming preliminary injunction hearing.

6       I wanted to ask about the deposition of the bank

7  witness, Mr. LaBriola.  I don't love the idea of requiring a

8  nonparty and a nonemployee to sit for a deposition with just a

9  little bit of notice.  Can you give me a sense of what your --

10  perhaps there are plans already in place regarding this

11  deposition.  Can you speak a little bit about this bank

12  representative deposition, please.

13       MR. LaBRIOLA:  Sure, Judge.  My understanding is that

14  the SBA loan application is actually a very involved process

15  that includes the submission of a marketing plan and marketing

16  data and information that is not simply just saying what are

17  my thoughts on what I want to do and move forward.  So the

18  documents may end up speaking for themselves, and it may be

19  the kind of information that I can then just simply ask Craig

20  Johnson about, who I believe would have been the person who

21  signed and submitted it.

22       But to the extent, you know, that there is somebody

23  who needs to say what is in the SBA loan application and why

24  is it there and what its purpose is, I think that would likely

25  come from the bank rather than from Mr. Johnson.  So it's

1  really that focus, and it is our client's belief that if

2  confidential information was used, it may have very well been

3  used during that SBA loan application process.

4          THE COURT:  Okay.  Mr. Cartwright, anything you'd

5  like to say regarding the depositions?

6          MR. CARTWRIGHT:  Just a couple of points, your Honor.

7  First, as you noted, the bank is a completely nonparty.  We

8  have no authority or ability to produce them, so any sort of

9  order we would ask not to require us to make them available

10  because we just don't have that ability to do that.

11          As to your Honor's indication that she will be making

12  three people available in the shortened time, I would ask for

13  clarity as to the scope of that deposition.  I'm hesitant and

14  do not think that the case demands that my client be put up

15  for deposition multiple times and then subject to seven-hour

16  depositions, you know, and giving Mr. LaBriola two bites of

17  the apple, so to speak.

18          So I would either ask that it be clear that this is

19  their one and only deposition or it be limited to an hour or

20  something of that nature to make sure that it is a focused

21  deposition about the preliminary injunction and not a

22  wide-ranging deposition.  If we could just get some clarity at

23  the front end of that, I think that would be helpful so as not

24  to be in the middle of a deposition again trying to talk

25  with -- trying to contact the Court for clarification.

1          THE COURT:  Yeah.  Sure thing.

2          MR. LaBRIOLA:  And, Judge, this is Pete LaBriola.  I

3  don't have a problem with, say, maybe limiting it to two

4  hours.  I'm pretty efficient because attorneys on the other

5  side will hear, and I certainly do think that I should not --

6  this should not be my one and only opportunity because, again,

7  we're going to be drinking from a firehose with regard to

8  discovery.  And I'm sure there will be additional documents

9  and information coming to us after this deposition.

10          THE COURT:  Okay.

11          MR. CARTWRIGHT:  Your Honor, my only comment on that,

12  as to the firehose that they're turning on, we're happy to

13  make it be a regular faucet.

14          THE COURT:  Okay.  So here's what I'd like for you

15  all to do on the depositions:  I think that the two-hour limit

16  is extremely reasonable.  I am not going to limit the scope of

17  the expedited depositions.  This is a case in which many of

18  the factual and legal issues are intertwined, and it would be

19  helpful to me to have some additional information about the

20  breach of contract, the trade secrets, and the tortious

21  interference claims in deciding a fair resolution of the case.

22  So I'm not going to limit the scope.

23          I will say -- and it sounds like, based upon

24  Mr. LaBriola's comment that he's an efficient deposition

25  taker, you know, speaking very generally it's my experience

that it is the rare case in which one person's deposition really needs to exceed the generous seven hours permitted by the rules. So I would just sort of make that observation as a general matter. But, yes, plaintiff can have two hours deposition for Mr. Johnson, Mr. Craig Johnson, Matthew Johnson, Mr. Hussein.

Mr. LaBriola, I'm not going to grant the request at the moment as to the bank representative, but if it turns out that you take these depositions and you find that you need further information, I'd ask you to so notify the Court at that time. Okay. I believe that that takes care of the depositions.

Okay. So moving on to the written discovery, plaintiffs seek, as I understand it, a combined 16 interrogatories, 59 requests for production, and 76 requests for admission. Those requests were all served on May 20th. They would otherwise be due on June 23rd, and D.H. Pace would like the responses a lot sooner. And so I just want to make sure. This is something, Mr. LaBriola, you still need a ruling on; is that right? Anything I need to know before I give you my ruling on this piece?

MR. LaBRIOLA: No. I don't think so. I think the requests were pretty straightforward, and the defense has had them for a long time.

THE COURT: Okay. So --

1          MR. CARTWRIGHT:  Your Honor?

2          THE COURT:  Yes.  Go ahead.

3          MR. CARTWRIGHT:  Sorry.  If I can just be -- you

4    know, there's only so many hours in a day, and so between ESI

5    Protocol, the scheduling and anticipation of these depositions

6    and the upcoming hearing that we seem headed towards, you

7    know, under normal circumstances I would probably be reaching

8    out for the professional courtesy of an extension on time to

9    respond to these.  So shortening my time, I think, is just not

10   a reasonable demand, especially given all of the other

11   information that we are providing to D.H. Pace in this matter.

12   And I don't think it prohibits them or stops them from being

13   able to prepare for their depositions or prepare for the

14   hearing.

15          THE COURT:  Okay.  I hear that defendants are

16   concerned about this number of requests on such an expedited

17   schedule, and I think the concern is reasonable.  I'm going to

18   suggest a sort of split-the-baby approach here.  So I'm going

19   to ask counsel for plaintiff to please pick your ten most

20   important interrogatories, your 20 most important requests for

21   production, your 20 most important requests for admission.

22   And I'm going to direct the defendants -- and to provide that

23   information by -- let's see, it's the end of the day -- to

24   provide that information by noon tomorrow.  And then --

25          MR. CARTWRIGHT:  By the --

1          THE COURT:  Sorry.  Go ahead.

2          MR. CARTWRIGHT:  Sorry, your Honor.  It will be our

3    responsibility to provide that information by end of day

4    tomorrow?

5          THE COURT:  No, no.  No, no.  I'm sorry.  I'm sorry.

6    What I'm saying is that Mr. LaBriola picks his ten -- the

7    interrogatories that he is most concerned about, 10 of them;

8    20 for the requests for production; 20 for the requests for

9    admission; and that he provides that information to you,

10   Mr. Cartwright, by tomorrow at noon.

11         And then as far as the deadline for, Mr. Cartwright,

12   for the defendants to respond, I'm going to give the response

13   date of June the 10th, and I do that with some reservation

14   because I know there are a lot of -- that's a short deadline.

15   But I do that deadline because I understand that you've had

16   the request since May 20th and I'm kind of -- I'm trying to

17   leave open right now the possibility that the case will go to

18   a preliminary injunction hearing by at the latest the 17th of

19   June.  So I'm looking at that kind of short deadline.

20         If it turns out that you all have some subsequent

21   conversations after our conference today and you decide that

22   you want to move out the prelim -- extend the TRO and move out

23   the preliminary injunction hearing, that may change things.

24   For now that's the schedule that I think makes sense in light

25   of the current request for preliminary injunction hearing by

1    the 17th of June.

2          Okay.  So next, the next item on my list was the ESI

3    Protocol.  I understand from Mr. LaBriola that there have been

4    some discussions on this score as recently as today.  The

5    plaintiff asked in its notice about an order requiring

6    defendants to comply with the first step of the ESI Protocol

7    B1.  Mr. LaBriola, has that step already been accomplished?

8          MR. LaBRIOLA:  I believe that has.  Craig, I think

9    you said the people from our forensics side were at -- not

10   Craig, Wayne, were at your client's office today and that that

11   was accomplished?

12         MR. CARTWRIGHT:  So, your Honor, just in full

13   disclosure, I believe that provision requires us to sign under

14   oath that this is the complete list.  We have not prepared

15   something under oath.  We have made our devices available and

16   are working on making all of our accounts available.  We have

17   all intentions of doing that under oath, but just from a

18   practical standpoint and given faulty memories, I have not

19   asked my clients to sign something under oath that I don't

20   know really moves the ball forward that much for them at this

21   stage.

22         And I would ask that the Court not require that just

23   because I don't want to -- we're not trying to hide anything,

24   but I don't want to have left off one thing, and suddenly my

25   clients have inadvertently signed a list of devices and

1  accounts and left off something and they signed it under oath

2  saying they'd give it.

3         We're being very open and have made devices.  Two of

4  the devices went home this afternoon.  For more color on this,

5  the client's facility lost power today, which, you know, just

6  happened.  It was an area-wide outage for about six hours this

7  morning, so there's going to have to be continued gathering

8  tomorrow that we've agreed to and are working with with the IT

9  person.

10        And I only mention that because the more we talk

11 about 24-hour deadlines and seven -- and 48-hour deadlines

12 that -- just the practicality of what can happen and arise in

13 between those times without any malice or any attempts to

14 delay are very large, and so I urge the Court to restrain from

15 confining us to those as much as possible.  But I do

16 understand that we're on an expedited schedule, and so I get

17 the Court's point, just that's our hesitation.  It's not that

18 we don't want to provide the documents, we don't want to work

19 hard.  It's just we don't want to be in a situation where for

20 circumstances outside of our ability, we can't fulfill our

21 obligation.

22        THE COURT:  I understand and respect that.

23 Mr. LaBriola?

24        MR. LaBRIOLA:  Judge, I was just going to note,

25 first, I appreciate that.  I was -- assume that we actually

1  were performing Step 2 today rather than Step 1, but Step 1 is

2  a very important step for us on having really the devices that

3  are being made available, the social media, the identification

4  of email accounts, including gmail, just to certify that those

5  are all of the items that were used since January 1 of 2021 so

6  that we don't find out down the road, oh, I had a Yahoo

7  account or I had an AOL or I had an iCloud account or

8  something else that if you had just simply asked for, we would

9  have made it available.  So that really was an important part

10  of Step 1.

11      So, again, you know, we needed -- before certainly

12  everybody goes through and reviews everything we want to make

13  sure we have the universe to know what it is.

14      MR. CARTWRIGHT:  And, your Honor, if I could

15  piggyback off of Mr. LaBriola, before any review starts I'm

16  happy to have them execute the affidavit.  My only concern is

17  that, you know, this evening they tell me about another vendor

18  list that they -- another vendor account.  And it's not a

19  situation where I think Mr. LaBriola needs to be concerned --

20  and I think he will attest to this -- where we are not being

21  open about everything we have.  I hope that my prior answer to

22  identifying what this particular provision was, is about that.

23      I mean, we are being extraordinarily open with the

24  other side as to the universe that exists out there and doing

25  our best to make sure it's off record.  I just don't want to

1  create a document that my client has to execute in a shortened

2  time frame that I don't think is necessary.

3        THE COURT:  Okay.  Thank you, Mr. Cartwright.

4  When -- can you suggest a more reasonable time frame in which

5  you can fulfill -- in which you can have your clients make the

6  certification under oath?

7        MR. CARTWRIGHT:  Sure.  I mean, I think by the end of

8  this week or at the -- I mean, they're going to testify to it,

9  I presume, not to guess work product, Mr. LaBriola's.  But I

10 assume that the deposition will inquire about these things.

11 So it's not a thought that we won't at some point testify

12 under oath about this.  It's purely just a practicality

13 situation.  So, you know, if we could have until Friday, at

14 which point I would assume that all the devices will have been

15 gathered, imaged, and we'll probably have even started our

16 preliminary search term runs on it, that would be my request.

17       THE COURT:  Okay.  I'm going to direct -- in that

18 case I'm going to direct the defendants to comply with

19 paragraph B1 of the ESI Protocol by Friday, the 10th, at noon.

20       Okay.  There was one other piece of the ESI Protocol

21 that factored into plaintiff's notice.

22       MR. LaBRIOLA:  That's correct.  Right.

23       THE COURT:  Plaintiff wanted disclosure of items in

24 paragraph 7F, as in Frank, within 24 hours.  And this is one

25 in which I wanted to ask for some clarification from the

1  parties.  Is this 7F step in play for purposes of the

2  anticipated preliminary injunction hearing?  And I ask because

3  I note that under paragraph 7E the investigator does not make

4  their list until four weeks after the forensic exam, so I'm

5  not sure I follow the deadlines here.  Mr. LaBriola, can you

6  shed some light?

7           MR. LaBRIOLA:  Judge, you've correctly identified the

8  issue.  I think this originally was being designed for

9  purposes of being a living document that could work throughout

10 the entire case but -- and originally this document was

11 drafted so that it dealt not just with confidential

12 information but with all documents, so, you know, emails that

13 relate to communications that were pertaining to things other

14 than the trade secret information of my clients.

15          And so it originally was to run both ways, and then

16 as we -- after we'd come to a consensus on it and we then were

17 looking at complying on your order to provide notification

18 with specificity as to ESI discovery necessary for the

19 preliminary injunction hearing, it became obvious that those

20 dates -- those time periods did make sense and they needed to

21 be moved forward.

22          So we sat down, talked with the forensic

23 investigator, and looked and said, gosh, what do we need to do

24 to try and make this work?  And that's how those other dates

25 that you have and should be in the notice filed on -- in

1   Document 55 set forth earlier time periods.  And I'm now

2   trying to turn to see if we had created a problem on that

3   particular date.

4   　　　　　　MR. CARTWRIGHT:  Your Honor, if I could just

5   interject here --

6   　　　　　　THE COURT:  Please.

7   　　　　　　MR. CARTWRIGHT:  -- the ESI Protocol, as Mr. LaBriola

8   suggested to be a living document, but we were trying to be

9   expeditious with this.  And I think that in many ways the

10  dates and time frames that are here reflect just a practical

11  time period that it requires to do discovery in this type of

12  case.  And so I don't think that they should be ignored, and I

13  do think that your Honor accurately identified something as to

14  an issue with the way it was set up.  But it's because the

15  dates and the time frames in there were deemed quick but not

16  at a speed that makes it impossible to reply.

17  　　　　　　So I would just like to group thoughts of expedition

18  off of these dates and times of review because I think that

19  they are reasonable and not designed to delay or make it

20  harder to proceed with discovery.

21  　　　　　　THE COURT:  Okay.  Thank you.  In that case I'm not

22  going to order the request that plaintiff sought in Document

23  55 with respect to paragraph 7F, but it sounds like there are

24  some discussions in the works between the parties on a revised

25  ESI Protocol.  And if you all need to have further discussions

1  about that, I am available and you just -- all you need to do

2  is contact Ms. Pittman, and we can have another phone

3  conference if that's helpful.

4          MR. CARTWRIGHT:  Sure.

5          MR. LaBRIOLA:  Yeah, thank you, Judge.  We'll put it

6  on the list to discuss E and F and some of the other dates and

7  see what we can work through.

8          THE COURT:  Okay.  That sounds good.  Just a few,

9  from my perspective, a few other things.  I understand from

10 the beginning of the telephone call, that there's some

11 discussion between the parties about the order of the TRO and

12 its discussion of the acquired and interest language.  On that

13 I do not want to give any rulings on that by telephone.  If

14 you all feel like you need to -- if one party or the other

15 decides that clarification is needed, I'm going to ask you to

16 put that in a motion.  I think that will be the better way to

17 address it.

18          And then should you -- I wanted to ask you all

19 whether you had a preference about whether the preliminary

20 injunction hearing will be in person or by Zoom.  I honestly

21 have no preference.  You don't have to tell me now, but at

22 some point Ms. Pittman will need to get it scheduled and need

23 to know how you all want to appear.

24          Mr. LaBriola, any thoughts on that or do you want to

25 just wait and let Ms. Pittman know at a later date?

1        MR. LaBRIOLA:  Well, I know that Mr. Roberts actually

2   lives in Florida, and he has asked in the past if Zoom could

3   be done.  And Judge Boulee had us come in person on one, and

4   then the chief magistrate court Judge Vineyard had us come in

5   person.  And I think in that instance it was important to have

6   the parties there in person.  But given that I'm sitting at

7   home under a Covid quarantine, I certainly have done them both

8   ways, and I can go however the Court would like.

9        MR. ROBERTS:  Your Honor, this is Dave Roberts, if

10  could speak.  And, first, Steve, I appreciate that.  I think

11  that would be our preference, your Honor.  Not only am I a

12  firm that's located in Atlanta, I run our Florida operations.

13  But we have a trial set that's coming up in the Northern

14  District of Florida, and that would make life tremendously

15  more easy for me.  So I appreciate Mr. LaBriola suggesting

16  that, and I think from our side if the Court were so inclined,

17  having a Zoom hearing would be great.

18        THE COURT:  Okay.  I have no problem with it.  That

19  sounds fine.

20        I think I've come to the -- yes, Mr. LaBriola?

21        MR. LaBRIOLA:  Sorry, Judge.  I was just going to

22  throw out, before you set a date and time, just one final

23  request.  On the 17th at 9:45 in the evening is when my flight

24  leaves Atlanta, and so if the Court is scheduling it on the

25  17th, if it could just be done early enough so in the event

1  the hearing runs a little bit late, I still have time to catch

2  a plane, that would be terrific.

3          THE COURT:  Certainly.  And you said, sorry, the --

4  you said 9:45 p.m.  Is that correct?

5          MR. LaBRIOLA:  P.M., correct, yes.  It's one of those

6  overnight flights.

7          THE COURT:  All right.  So I guess before we set a

8  hearing I was going to give you all the opportunity to

9  discuss, after this call, whether you want to -- I guess I

10  need some -- I need some clarification on whether -- and you

11  can tell me now or you can take some time to talk about it

12  amongst yourselves.  But I was hearing at the beginning of the

13  hearing that there was some discussion about potentially

14  having this hearing not within 14 days but at a later time.

15  Perhaps what would be helpful is we can give you a date now,

16  and then if you come back to us and say you've spoken and you

17  think you can move this on to another -- a later date, that

18  would be fine.

19          MR. LaBRIOLA:  That would be my preference, your

20  Honor.

21          THE COURT:  Okay.  All right.  And, Mr. Cartwright or

22  Mr. Roberts, does that sound like --

23          MR. CARTWRIGHT:  I think that is fine.  I would like

24  to ask, your Honor, if in the event that we are able to work

25  out an extension of the TRO that puts this hearing not at such

1  a quick pace, if the parties could also be allowed to engage

2  in a reworking of the deadlines for the discovery and submit

3  that as well, not to second guess your Honor's decisions or

4  ask for her to overrule or anything like that, just

5  recognizing that the practicalities for why these deadlines

6  have to be so short is because we're about to have a hearing,

7  and then if we extend the hearing, then it may make -- it

8  would be easier on everyone if the deadline was not so

9  compressed and if your Honor would be okay with us resetting

10  those deadlines as well.

11      THE COURT:  You all are experienced counsel, and I

12  would ask that you have, you know, good faith discussions to

13  see what you can work out in the event that the preliminary

14  injunction hearing takes place past the 14-day window.  If

15  there are disagreements about that, as noted earlier, you can

16  just let Ms. Pittman know, and we can get back on the phone.

17      Okay.  Anything else from the plaintiff's side before

18  we adjourn for -- oh, sorry.  I forgot something.  What I'm

19  going to do is I'm going to ask Ms. Pittman to reach -- I just

20  want to, instead of just setting a hearing right now,

21  Ms. Pittman will be in touch with you right after this call by

22  email to just make sure that there are no other kind of like

23  dates when we should not schedule the hearing between now and

24  two weeks from now.  So she'll get you a date very shortly.

25      So having said that, is there anything else from

1  plaintiff's side that we need to address before we adjourn

2  today?

3          MR. LaBRIOLA:  No, your Honor.

4          THE COURT:  Okay.  Thank you.  And from the

5  defendants?

6          MR. CARTWRIGHT:  No, your Honor.  Appreciate your

7  time this afternoon.

8          THE COURT:  Okay.  Likewise.  We are adjourned.

9  Thank you.

10         MR. LaBRIOLA:  Thank you.

11         MR. CARTWRIGHT:  Thank you.

12         (Whereupon, the proceedings were adjourned at 4:10

13  p.m.)

14                          -  -  -

15

16

17

18

19

20

21

22

23

24

25

```
1                        REPORTERS CERTIFICATE

2

3

4          I, Wynette C. Blathers, Official Court Reporter for

5   the United States District Court for the Northern District of

6   Georgia, with offices at Atlanta, do hereby certify:

7          That I reported on the Stenograph machine the

8   proceedings held in open court on June 6, 2022, in the matter

9   of D.H. PACE COMPANY, INC. v. MATTHEW JOHNSON et al., Case No.

10  1:22-CV-01005-SEG; that said proceedings in connection with

11  the hearing were reduced to typewritten form by me; and that

12  the foregoing transcript (Pages 1 through 26) is a true and

13  accurate record of the proceedings.

14         This the 23rd day of June, 2022.

15

16

17

18                            _____
                         /s/  Wynette C. Blathers, RMR, CRR
19                            Official Court Reporter

20

21

22

23

24

25
```