IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

| | |
|---|---|
| D. H. PACE COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW JOHNSON and LIBERTY GARAGE DOOR SERVICES, LLC, <br><br> Defendants. | Civil Action No. 1:22-cv-1005-SEG |

**Reply in Support of Motion for Leave to
Amend Complaint and Join Party**

Plaintiff D. H. Pace Company, Inc. ("DH Pace") files this Reply in Support of its Motion for leave to Amend Complaint and Join Party, showing the Court as follows:

**Introduction**

Contrary to Defendants' arguments, the proposed Second Amended Complaint is not an "obvious ploy to keep harassing Defendants and Craig Johnson" or an attempt to shut down Liberty. It is comprised of well-pleaded allegations and claims. Defendants try to avoid the Second Amended Complaint by contending that the proposed amendment is futile. But a review of the Second Amended Complaint shows that it adds plausibly-pleaded claims against both Liberty and

1

Craig Johnson. And Defendants fail to meet the high bar necessary for their futility argument to succeed. For this reason, and the reasons below, the Court should grant DH Pace's Motion for Leave to Amend.

## Argument

**1. The legal standard for futility.**

It is well established that "the [C]ourt should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Bell v. Raffensperger,* 1:21-CV-02486-SEG, 2022 WL 18243320, at *4 (N.D. Ga. Dec. 6, 2022) (explaining that "[t]he Eleventh Circuit directs district courts to 'generously allow amendments even when the plaintiff does not have the right to amend the complaint [as a matter of course]'") (citation omitted).

One limited exception to this principle is futility. *See Labas Ventures, LLC v. Butterfly Agency, LLC*, 1:20-CV-03889-ELR, 2021 WL 4866997, at *5 (N.D. Ga. Aug. 4, 2021). "The party opposing amendment bears the burden of proving futility." *Georgia State Conf. of NAACP v. Georgia*, 117CV1427TCBMLBBBM, 2018 WL 4207089, at *2 (N.D. Ga. Sept. 4, 2018). To meet this heavy burden, Defendants must show that the "complaint as amended is still subject to dismissal." *Id.* (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

In evaluating whether a proposed amended complaint fails to state a claim upon which relief may be granted, the Court "must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." *Taylor v. Bd. of Regents of Univ. Sys. of Georgia*, 1:20-CV-5048-SEG, 2022 WL 4857906, at *3 (N.D. Ga. Oct. 3, 2022). After doing so, the Court must determine whether the proposed amended complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

2. **DH Pace plausibly pleads DTSA and GTSA claims against Craig Johnson and Liberty.**

Defendants first contend that DH Pace did not plausibly plead claims for misappropriation of trade secrets under the Defendant Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the Georgia Trade Secrets Act ("GTSA"), O.C.G.A. § 10-1-760. Not true. "To state plausible claims under both GTSA and DTSA, [DH Pace] must assert that (1) it had a trade secret; and (2) the opposing party misappropriated that trade secret." *U.S. Sec. Associates, Inc. v. Lumby*, 1:18-CV-5331-TWT, 2019 WL 8277263, at *10 (N.D. Ga. Sept. 25, 2019). Both elements are met here.

First, Defendants do not appear to contest that the documents at issue qualify as trade secrets under the DTSA and GTSA. Nor could they. The Court has already determined "that the documents Johnson emailed to himself," which serve

as the basis for the trade secret claims against Craig Johnson and Liberty, "contained 'trade secrets' under the DTSA and the GTSA." (ECF No. 57 at 34). Thus, the first element is met.

Second, DH Pace plausibly alleges "misappropriation." The DTSA and GTSA share the same definition for this term. § 1839(5); § 10-1-761(2). Under both statutes, misappropriation includes disclosure or use of a trade secret of another without express or implied consent who, at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was (1) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit its use or (2) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret. § 1839(5)(B)(ii)(II)-(III); § 10-1-761(2)(A)(ii)(II)-(III).

The proposed Second Amended Complaint establishes, among other facts, that (1) Matt Johnson downloaded the DH Pace Trade secrets (as defined at ¶ 139) and emailed them to his personal email address; (2) Matt Johnson provided the DH Pace Trade Secrets to Craig Johnson and Liberty (through its agents, Craig and Matt Johnson); (3) after this litigation began, Craig Johnson and Liberty (through its principal Craig Johnson) admitted that Matt Johnson provided them with the DH Pace Trade Secrets; (4) Craig Johnson and Liberty used the DH Trade Secrets

4

in furtherance of Liberty's business; (5) Matt Johnson printed off DH Pace Trade Secrets and shared these files with Craig Johnson and Liberty in furtherance of Liberty's business; (6) Craig Johnson and Liberty knowingly accessed and used the DH Pace Trade secrets to benefit themselves; and (7) Craig Johnson and Liberty knew Matt Johnson was subject to confidentiality covenants with DH Pace and that Matt Johnson owed a duty to maintain the secrecy of the DH Pace Trade Secrets. (ECF No. 98-2, ¶¶ 37-46; 78-79; 144-48; 180-84). When these allegations are accepted as true, the proposed Second Amended Complaint plausibly pleads these claims.

Recognizing this fact, Defendants focus on allegations extrinsic to the proposed Second Amended Complaint related to Mr. Broom's investigation. Of course, these allegations are inappropriate for the Court's analysis. Even so, remarkably, Defendants admit Matt Johnson (one of Liberty's owners) not only downloaded the DH Pace Trade Secrets and emailed these files to his personal email, but that he saved them on his personal laptop. Of course, this fact and all the evidence gathered during the "extensive discovery conducted," which is extrinsic to the proposed Second Amended Complaint, will be addressed at the summary judgment phase. But, at this phase, the Court's analysis focuses solely on

whether the DTSA and GTSA claims were plausibly pleaded. Because they were, the Court should reject Defendants' arguments.

   3. **DH Pace plausibly pleads tortious interference claims related to Hussein and West against Craig Johnson and Liberty.**

Defendants next contend that DH Pace's claim against Craig Johnson and Liberty for tortious interference with contract and business relations is futile for two reasons. First, Defendants allege that DH Pace did not identify a valid contractual obligation that Mr. Hussein or Mr. West owed. Second, Defendants allege that DH Pace does not allege the "improper conduct" necessary to avoid the "competitor's privilege." Both arguments lack merit.

As for the first argument, Defendants focus only on the noncompete restrictive covenants in the Hussein and West Agreements. But DH Pace's tortious interference claim also focuses on Craig Johnson and Liberty purposefully inducing Brian West to breach the West Agreement by encouraging him to solicit DH Pace employees to work at Liberty. (ECF No. 98-2, ¶ 216). On this basis alone, Defendants' first argument lacks merit.

Still, Defendants' noncompete argument lacks merit too. While Defendants contend that the Hussein and West Agreements contain "noncompete covenants . . . that this Court found unenforceable against M[att] Johnson," Defendants fail to note that the Hussein and West Agreements are governed by Kansas law. (ECF

Nos. 109-2 at 3; 109-3 at 3). In contrast, Matt Johnson's employment agreement was governed by Georgia law. More importantly, the Court did not find that Matt Johnson's noncompete restrictive covenant was unenforceable. The Court determined that it must be blue-penciled in accordance with Georgia law. These facts are fatal to Defendants' first futility argument.

As for the second argument, DH Pace alleges improper conduct that removes the "competitor's privilege." While it is true that the wrongful act or improper conduct necessary to sustain a claim for tortious interference outside the competitor's privilege "generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions," this list is not exhaustive.

Instead, "it is true that actions taken with the sole purpose of harming another party can be malicious enough to constitute a wrongful act." *LifeBrite Labs., LLC v. Cooksey*, 1:15-CV-4309-TWT, 2016 WL 7840217, at *9 (N.D. Ga. Dec. 9, 2016) (citation omitted). As the *LifeBrite* court noted, the Georgia Court of Appeals has explained that "[m]erely to persuade a person to break his contract, may not be wrongful in law or fact. But if the persuasion be used for the indirect purpose of injuring the plaintiff, or of benefitting the defendant, at the expense of the plaintiff,

7

it is a malicious act, and a wrongful act, and an actionable act if injury ensues from it." *Id.* at n. 87 (citing and quoting *Architectural Mfg. Co. of Am. v. Airotec, Inc.*, 119 Ga. App. 245, 249 (1969)); *see also Carroll Anesthesea Assocs., P.C. v. AnestheCare, Inc.*, 234 Ga. App. 646, 649 (1998) (explaining that improper conduct can include "a plan or scheme designed to impair [the plaintiff's] financial position").

Of course, "the Georgia Court of Appeals has held that the privilege of fair competition does not did not permit corporate officers to violate their fiduciary duties by recruiting company employees to work for a new business." *Wind Logistics Prof'l, LLC v. Universal Truckload, Inc.*, 1:16-CV-00068, 2019 WL 4600055, at *13 n.9 (N.D. Ga. Sept. 23, 2019) (citing *Gresham & Assocs., Inc. v. Strianese*, 595 S.E.2d 82, 85 (Ga. Ct. App. 2004)). In *Universal*, the court held that this principle prevented a new, competing employer from relying on the competitor's privilege to defeat a claim for tortious interference, which was based on conduct that occurred while the former employee owed fiduciary duties. *Id.*

The same holds true here. DH Pace plausibly alleges that Matt Johnson owed it a fiduciary duty, and Defendants do not challenge this allegation. DH Pace also plausibly alleges that Craig Johnson, Liberty, and Matt Johnson purposefully induced Brian West and Shafi Hussein to breach the Hussien and West Agreements while Matt Johnson was still employed at DH Pace. (¶¶ 51-71, 80-84, 100-

118). Thus, because Matt Johnson's conduct occurred while he owed fiduciary duties to DH Pace and because Matt Johnson's conduct is imputed to Liberty based on his ownership in Liberty at the time the conduct occurred, Defendants "cannot claim that [this] conduct was that of a privileged competitor." *Universal,* 2019 WL 4600055, at *13 n.9. On this basis alone, Defendants' argument fails.

In any event, the proposed Second Amended Complaint plausibly pleads the improper conduct/wrongful acts necessary to sustain this claim. The proposed Second Amended Complaint establishes:

- Craig Johnson and Matt Johnson (while still employed at DH Pace) worked on forming a competing entity in the Spring of 2021. (¶¶ 47-48).

- Craig Johnson and Matt Johnson (while still employed at DH Pace) formally registered Liberty in August 2021. (¶ 49).

- Matt Johnson, as a Liberty owner, informed DH Pace service technicians that he would mark them out early from work at DH Pace so that they would not receive a DH Pace work assignment that would keep them late at work for DH Pace so they could meet with him or with him and Craig Johnson to learn more about Liberty and to consider the benefits of joining Liberty and leaving DH Pace. (¶¶ 51-53).

- Craig Johnson, Liberty, and Matt Johnson refused to take no for an answer

when soliciting DH Pace employees, even offering a $5,000 signing bonus for one employee to join Liberty from DH Pace after this employee decided not to leave DH Pace to join Liberty. (¶¶ 54-61).

- Craig Johnson, Liberty, and Matt Johnson immediately recruited a DH Pace technician, Shafi Hussein, after another DH Pace Technician backed out from joining Liberty. (¶¶ 62-67).

- Craig Johnson, Liberty, and Matt Johnson held at least one dinner with Brian West and Shafi Hussein that was treated as a business expense of Liberty when Matt Johnson, Brian West, and Shafi Hussein were all still employed by DH Pace. (¶¶ 68-70).

- Craig Johnson, Liberty, and Matt Johnson recruited at least one other management-level employee, Brian West, from DH Pace. (¶ 81).

- Matt Johnson, as a Liberty owner, and Brian West conspired to lie to DH Pace as to why they were leaving DH Pace's employment to hide the existence of Liberty from DH Pace. (¶¶ 66, 72, 113-114).

- Matt Johnson, as a Liberty owner, instructed DH Pace employees to watch his Facebook posts as code to know when he was ready to hire them. (¶¶ 87-89).

- Craig Johnson, Liberty, and Matt Johnson performed these acts when

- armed with DH Pace's trade secrets and confidential information that Matt Johnson gained through his employment at DH Pace. (¶¶ 40-43, 78).

- Craig Johnson, Liberty, and Matt Johnson knew the Hussein and West Agreements contained restrictive covenants, which, among other items, prohibited Brian West or Shafi Hussein from engaging in business that competes with DH Pace. (¶¶ 211-214).

- Still, Craig Johnson, Liberty, and Matt Johnson induced Brian West and Shafi Hussein to violate their agreements by competing against DH Pace and soliciting other DH Pace employees to join Liberty. (¶¶ 215-216).

When these allegations are accepted as true, the proposed Second Amended Complaint plausibly pleads a claim for tortious interference because this conduct was for the indirect purpose of injuring DH Pace or benefitting Defendants at the expense of DH Pace. *See Universal,* 2019 WL 4600055, at *12-13. Thus, the Court should reject Defendants' futility argument for this claim.

   **4. DH Pace plausibly pleads a tortious interference claim against Craig Johnson for conduct related to Matt Johnson**.

Defendants next attack DH Pace's claim for tortious interference against Craig Johnson. This claim is only against Craig Johnson and is for his interference with the contract between Matt Johnson and DH Pace, which is asserted against only Craig Johnson. Before addressing these arguments, DH Pace disputes that

11

Defendants have standing to assert arguments on the futility of a claim that is not asserted against them. On this basis alone, the Court should reject Defendants' arguments.

Even if the Court considers Defendants' arguments, they should be rejected. First, Defendants assert the same "improper conduct" argument they asserted for the previous claim. This argument lacks merit for the same reasons addressed above in Section 3. The proposed Second Amended Complaint plausibly pleads a claim for tortious interference because this conduct was for the purpose of injuring DH Pace or benefitting Defendants at the expense of DH Pace. *See Universal,* 2019 WL 4600055, at *12-13.

Second, Defendants argue that Craig Johnson is not a stranger to Matt Johnson's employment agreement with DH Pace. To support this argument, Defendants rely on only *Parnell v. Sherman & Hemstreet, Inc.*, 364 Ga. App. 205 (2022). But *Parnell* is distinguishable. There, the court determined that the former employee's new employer—Liberty here—was not a stranger to the employee's relationship with its former employer—DH Pace here—because it had a "legitimate financial interest" in the business being moved over to it from the old employer. *Id.* at 216.

In contrast, DH Pace has brought a claim against only Craig Johnson, who is not the new employer and does not have the same "legitimate financial interest"

that Liberty would have in inducing these breaches. There is no allegation or indication that Craig Johnson had a "direct economic interest" in Matt Johnson's employment agreement with DH Pace. *Howerton v. Harbin Clinic, LLC*, 333 Ga. App. 191, 200 (2015). Thus, the Court should hold that, based on the allegations in the proposed Second Amended Complaint, Craig Johnson is a stranger to the contract. When the Court reaches this holding, Defendants' argument fails.

**5. DH Pace plausibly pleads aiding and abetting a breach of fiduciary duty against Craig Johnson.**

Defendants also argue that DH Pace's claim for aiding and abetting against Craig Johnson is futile based on the competitor's privilege. Not so. As noted above, this Court previously recognized that "the Georgia Court of Appeals has held that the privilege of fair competition does not did not permit corporate officers to violate their fiduciary duties by recruiting company employees to work for a new business." *Universal*, 2019 WL 4600055, at *13 n.9. Because Matt Johnson cannot rely on the competitor's privilege to breach his fiduciary duties by recruiting DH Pace employees, Craig Johnson cannot use this privilege to defeat the claim against him for aiding and abetting this breach.

Even assuming Defendants can get over that hurdle (which they cannot), the proposed Second Amended Complaint establishes wrongful acts and improper conduct by Craig Johnson. These acts are detailed above in Section 3. These

13

allegations go well beyond the single allegation—"Craig Johnson had 'Matthew Johnson solicit and attempt to hire DH Pace employees to work at Liberty'"—that Defendants cherry-pick out of the proposed Second Amended Complaint. And, when as accepted as true, these allegations plausibly plead the necessary wrongful acts and improper conduct for this claim to survive. Thus, Defendants' argument should be rejected.

6. **DH Pace plausibly pleads a claim for expenses of litigation under O.C.G.A. § 13-6-11**.

Finally, Defendants argue that DH Pace's claim for expenses of litigation under O.C.G.A. § 13-6-11 against Craig Johnson is futile based on the false premise that all the other claims against Craig Johnson are futile and will be rejected. Because Defendants' arguments as to the other claims asserted against Craig Johnson fall flat for the reasons above, Defendants' argument as to this claim fails too.

7. **In the unlikely event that the Court is inclined to adopt Defendants' arguments, the Court should allow DH Pace the opportunity to cure any deficiencies in the pleadings**.

DH Pace is confident its proposed Second Amended Complaint plausibly pleads the claims addressed in Defendants' Motion. That said, if the Court is inclined to adopt Defendants' arguments, whether in whole or in part, then DH Pace respectfully requests leave to submit a revised proposed Second Amended Complaint to cure any alleged deficiencies.

## Conclusion

For these reasons, the Court should grant DH Pace's Motion for Leave to File Amended Complaint and Join Party and reject Defendants' futility arguments.

Respectfully submitted, this 3rd day of February, 2023.

**FELLOWS LABRIOLA LLP**

<u>/s/ Stephen T. LaBriola</u>
Stephen T. LaBriola
Georgia Bar No. 431026
Ethan M. Knott
Georgia Bar No. 737481
Sharika Zutshi
Georgia Bar No. 768189
Suite 2400 Harris Tower
233 Peachtree Street, NE
Atlanta, GA 30303
(404) 586-9200
slabriola@fellab.com
eknott@fellab.com

*Attorneys for Plaintiff D. H. Pace Company, Inc.*

## TYPE AND FONT CERTIFICATION

The undersigned certifies that the foregoing complies with Local Rule 5.1(C) regarding typefaces and fonts.

s/Stephen T. LaBriola  
Stephen T. LaBriola

## CERTIFICATE OF SERVICE

I certify that this day, I electronically filed the foregoing with the clerk's office CM/ECF system, which will automatically serve the document upon all counsel of record.

Respectfully submitted, this 3rd day of February, 2023.

s/ Stephen T. LaBriola