UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DH PACE COMPANY, INC., | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:22-CV-01005-SEG |
| MATTHEW JOHNSON and LIBERTY GARAGE DOOR SERVICES, LLC, | |
| Defendants. | |

## O R D E R

This matter is before the Court on Plaintiff's motion for leave to amend its complaint and to a join party. (Doc. 98.) The motion has been fully briefed. (Doc. 103, 111.) Also before the Court are Plaintiff's motions to dismiss Defendants' counterclaims (Doc. 36, 63) and Plaintiff's outstanding request for attorney's fees related to its TRO motion. (Doc. 2.)

### I.    Factual Background

This is a dispute between an employer and a former employee who left his job to start a competing enterprise. Plaintiff DH Pace has sued Defendant Matthew Johnson and Johnson's company, Defendant Liberty Garage Door Services, LLC ("Liberty") in a lengthy, seven-count complaint. Plaintiff contends that Johnson misappropriated its trade secrets and other

confidential/proprietary information and used them to facilitate the growth of Liberty's business. While he worked at DH Pace, Johnson signed an employment agreement that contained restrictive covenants, including confidentiality, non-compete, non-solicit, and non-hire provisions. Plaintiff claims that Johnson breached those provisions.

Plaintiff's amended complaint asserts claims for violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836; violation of the Georgia Uniform Trade Secrets Act (GTSA), O.C.G.A. § 10-1-760; breach of contract; breach of fiduciary duty; breach of duty of loyalty; tortious interference with contract and business relations; and aiding and abetting breach of fiduciary duty. (Doc. 44.) A detailed factual background can be found in the Court's TRO order. (Doc. 57.) Relevant to the motion to amend now under consideration is that Johnson is alleged to have gone into his new business (Liberty) alongside his uncle, Craig Johnson. Plaintiff seeks to add Craig Johnson as a defendant and to assert several claims against him and Liberty.

## II.   Procedural History

DH Pace filed its complaint on March 11, 2022. On the same day, it moved for a temporary restraining order to enjoin Matthew Johnson from violating his restrictive covenants and to enjoin Johnson and Liberty, among other things, from using Plaintiff's trade secrets. (Doc. 2.) Following a

2

hearing, the Court granted in part Plaintiff's motion for a TRO (Doc. 57) and granted in part Plaintiff's request for expedited discovery. (Doc. 58.) The parties exchanged written discovery, conducted depositions, and facilitated the imaging and forensic review of numerous devices and/or accounts belonging to Defendants. On July 14, 2022, the parties stipulated to the entry of a consent preliminary injunction. (Doc. 83.)

## III. Discussion

### A. Plaintiff's Motion to Amend Under Rule 15

DH Pace contends that it learned new information through discovery about Craig Johnson's role in this matter. It seeks to file a second amended complaint to add new claims and to join Craig Johnson as a defendant. (Doc. 98.) The new claims include: (1) DTSA and GTSA claims against Craig Johnson and Liberty; (2) tortious interference with contract and business relations claims against Craig Johnson and Liberty; (3) an aiding and abetting a breach of fiduciary duty claim against Craig Johnson; and (4) a claim for attorney's fees against Craig Johnson.

The decision to grant or deny leave to amend a pleading is "committed to the sound discretion of the district court," but that discretion "is strictly circumscribed" by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which instructs that leave to amend should be "freely give[n] when justice so

requires." *City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1277 (11th Cir. 2015) (quoting *Gramegna v. Johnson,* 846 F.2d 675, 678 (11th Cir.1988)). A justifying reason must be apparent for denial of a party's motion to amend its pleadings. *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993). In making its decision, the district court may consider "such factors as 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of the amendment.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, Defendants, eschewing any argument as to undue delay or prejudice, lean on the concept of futility.[1] They contend that Plaintiff's proposed amendments fail to state a claim for trade secrets violations,

---

[1] Undue delay is not at issue here. True, nearly a year has passed since Plaintiff filed the original complaint, but Plaintiff alleges that it recently "learn[ed] the scope of Craig Johnson's involvement" (Doc. 98-1 at 2) through discovery, and Defendants don't argue otherwise. The motion, furthermore, comes within the deadline in the Court's scheduling order. And this case has been so actively litigated that no one could accuse any party of dallying. Neither can the Court find that Defendants would be prejudiced by the proposed amendment. Craig Johnson's involvement in this matter has been known by the parties since the incipient stages of this litigation. Defendants do not argue either undue delay or prejudice.

4

tortious interference with contract and business relations, and aiding and abetting a breach of fiduciary duty. (Doc. 103.)

"A claim is futile if it cannot withstand a motion to dismiss" brought under Rule 12(b)(6). *Atlanta Indep. Sch. Sys. v. S.F. ex rel. M.F.*, 740 F. Supp.2d 1335, 1343 (N.D. Ga. 2010). Under Rule 12(b)(6), the Court must accept as true the allegations in the complaint drawing all reasonable inferences in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Further, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The party opposing amendment has the burden of proving futility. *Georgia State Conf. of NAACP v. Georgia*, No. 1:17-CV-1427-TCB, 2018 WL 4207089, at *2 (N.D. Ga. Sept. 4, 2018).

The Court considers each of Defendants' futility arguments below and determines that Plaintiff's motion to amend should be granted.

1. **Plaintiff Plausibly States DTSA and GTSA Claims Against Craig Johnson and Liberty**

Defendants urge the Court to find that Plaintiff's proposed second amended complaint fails to state claims under GTSA and DTSA. "To state plausible claims under both GTSA and DTSA, [DH Pace] must assert that (1) it had a trade secret; and (2) the opposing party misappropriated that trade secret." *U.S. Sec. Associates, Inc. v. Lumby*, 1:18-CV-5331-TWT, 2019 WL 8277263, at *10 (N.D. Ga. Sept. 25, 2019).

Defendants do not (at least for purposes of the present dispute) contest that the documents described in the proposed pleading are "trade secrets" under DTSA and GTSA. They instead characterize Plaintiff's allegations as conclusory, threadbare recitations of the elements of the respective, trade secret claims. The slimness of the supporting factual allegations should be considered striking, Defendants urge, because the proposed second amended complaint follows an intensive period of discovery and forensic review. Defendants argue that the discovery process turned up little for Plaintiff to go on to support its DTSA and GTSA claims.

Turning to the allegations in question, the proposed second amended complaint states that Matthew Johnson downloaded Plaintiff's trade secrets, emailed them to himself, and provided them to Craig Johnson and Liberty.

6

The proposed pleading further alleges that Craig Johnson and Liberty knowingly accessed and used Plaintiff's trade secrets to benefit themselves, and that Craig Johnson did so despite his knowledge that his nephew owed a duty to maintain the secrecy of Plaintiff's trade secrets. (Doc. 98-2, ¶¶ 37-46; 78-79; 144-48; 180-84).

Having reviewed the proposed pleading in the light most favorable to DH Pace, the Court considers that the allegations are not so conclusory as to warrant dismissal under Rule 12(b)(6).  On the contrary, they plausibly allege the chain of events that began with Matthew Johnson downloading the trade secrets and ended with Johnson's alleged provision of the trade secrets to his uncle and to Liberty for their use to benefit the new company.  While one might like to have more abundant context as to exactly how Craig Johnson and Liberty "used" the trade secrets "in furtherance of Liberty's business," the pleading standard is satisfied here, especially when the specific allegations at issue are viewed alongside the full factual mosaic in the proposed pleading.

As for Defendants' invitation to consider the alleged lack of factual support for the trade secrets claims in light of the forensic discovery that has taken place, the Court is limited for now to the four corners of the proposed second amended complaint.  It must decline to consider such extrinsic

evidence. Defendants' arguments regarding what the forensic expert's investigation did or did not show will be more appropriate for summary judgment. The second amended pleading contains sufficient facts, accepted as true, to state DTSA and GTSA claims that are plausible on their face.

## 2. Plaintiff Plausibly States Claims for Tortious Interference with Contract and Business Relations Against Liberty and Craig Johnson

Defendants argue that Plaintiff's second amended complaint fails to state claims for: (1) tortious interference with contract and business relations involving Craig Johnson's and Liberty's alleged solicitation of Shaffi Hussein and Brian West, and (2) tortious interference with contract and business relations involving Craig Johnson's alleged meddling in Matthew Johnson's employment contract and relationship.[2]

Under Georgia law, "[t]ortious interference claims, whether asserting interference with contractual relations [or] business relations, . . . share certain common essential elements: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and

---

[2] Hussein was formerly a DH Pace service technician (Doc. 98-2 ¶ 64), and West was formerly a DH Pace dispatch manager. (*Id.* ¶ 81.) It is alleged that Defendants solicited them to join Liberty.

with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or their parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Gordon Document Prod., Inc. v. Serv. Techs., Inc.*, 308 Ga. App. 445, 449 (2011).[3]

Defendants' first argument, regarding the tortious interference claims involving Hussein and West, can be quickly dismissed. Outside of the articulation of the legal standard, Defendants devote two sentences to discussion of this claim. (Doc. 103 at 8.) Neither is sufficient to meet Defendants' burden to show futility. While further briefing on a dispositive motion may reveal a different result, Defendants have not, at this stage, meaningfully presented their argument with respect to the enforceability of the restrictive covenants of these two individuals.

Further, the proposed second amended complaint plausibly alleges that Craig Johnson and/or Liberty engaged in "improper action or wrongful conduct." *Gordon Document Prod., Inc.*, 308 Ga. App. at 449. Courts have

---

[3] "Tortious interference with business relations is a distinct tort from that of tortious interference with contractual relations, although some of the elements of the two torts are similar." *Sweet City Landfill, LLC v. Lyon*, 352 Ga. App. 824, 833 (2019) (citations and quotations omitted).

9

defined "improper action or wrongful conduct" as "wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.'" *Kirkland v. Tamplin*, 285 Ga. App. 241, 244 (2007) (quoting *Sommers Co. v. Moore*, 275 Ga. App. 604, 606 (2005)). Notably, to meet this standard a "[p]laintiff must show more than that the defendant simply persuaded a person to break a contract." *Kirkland*, 285 Ga. App. at 244; *see also LifeBrite Lab'ys, LLC v. Cooksey*, No. 1:15-CV-4309-TWT, 2016 WL 7840217, at *9 (N.D. Ga. Dec. 9, 2016) (stating that "the type of improper conduct that the law has in mind is something more than simple persuasion").

A review of the proposed pleading does not reveal any allegation of "predatory tactics" such as physical violence, fraud, misrepresentation, defamation, or unwarranted criminal prosecutions. Plaintiff does, however, allege "use of confidential information" by Craig Johnson. *See* Doc. 98-2 ¶¶ 144-52; 180-89; *Kirkland*, 285 Ga. App. at 244. Plaintiff also points the Court to a line of cases stating that, even in the absence of the kind of "predatory

tactics" set forth above, "actions taken with the sole purpose of harming another party can be malicious enough to constitute a wrongful act." *See id.*[4]

The Court concludes that Plaintiff has alleged facts (*see* Doc. 98-2 ¶¶ 210-224) sufficient to survive – if only narrowly – a motion to dismiss. The facts, when viewed in the light most favorable to Plaintiff, could permit a reasonable juror to draw the inference that the actions listed in the proposed pleading were taken with the purpose of harming DH Pace. Whether DH Pace can carry its burden as to this claim later in this case remains to be seen. *See, e.g., LifeBrite Lab'ys, LLC*, 2016 WL 7840217, at *9 (granting summary judgment to defendants on tortious interference claim where plaintiff failed to show evidence that satisfied the "wrongful act" element).

We turn next to Defendants' second argument, which involves consideration of the so-called "stranger doctrine" and its application to the proposed claim that Craig Johnson interfered with Matthew Johnson's contract and relationship with DH Pace. Of relevance to Defendants' argument, the "requirement that the tortfeasor acted 'without privilege'

---

[4] *See also Architectural Mfg. Co. of Am. v. Airotec, Inc.,* 119 Ga. App. 245, 249 (1969) ("Merely to persuade a person to break his contract, may not be wrongful in law or fact. But if the persuasion be used for the indirect purpose of injuring the plaintiff, or of benefitting the defendant, at the expense of the plaintiff, it is a malicious act, and a wrongful act, and an actionable act if injury ensues from it.")

11

requires proof that the defendant was an intermeddler or 'stranger' to the business relationship at issue." *ASC Constr. Equip. USA, Inc. v. City Commercial Real Estate, Inc.*, 303 Ga. App. 309, 313 (2010) (citation omitted). Under the stranger doctrine, for a defendant to be liable for tortious interference with contractual or business relations, the defendant must be a stranger to both the contract and the business relationship giving rise to the contract. *Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 269 Ga. 604, 609 (1998). Further, where "a defendant had a legitimate interest in either the contract or a party to the contract, he is not a stranger to the contract itself or to the business relationship giving rise thereto and underpinning the contract." *Cox v. City of Atlanta*, 266 Ga. App. 329, 332 (2004).

Here, Defendants rely on *Parnell v. Sherman & Hemstreet, Inc.*, 364 Ga. App. 205 (2022), a case that arguably narrowed the circumstances under which a plaintiff can bring a tortious interference claim against its former employee's new employer. In *Parnell*, a real estate agent (Parnell) left his company (S&H) and went to work for a competitor (Re/Max). It was alleged that Parnell then solicited customers of S&H, the plaintiff, for the benefit of his new employer. This was in violation of the agent's employment agreement. There was a motion to dismiss the tortious interference claim

12

based on the stranger doctrine. The trial court denied it and the Court of Appeals reversed.

The Court of Appeals observed that Re/Max hired Parnell to perform similar services to those he performed for S&H, and that Parnell allegedly solicited his former employer's clients on behalf of Re/Max. *Id*. at 215-16. The Court of Appeals further noted that Re/Max was alleged to have conspired with Parnell in Parnell's contractual breaches against S&H. The court in *Parnell* ultimately concluded as follows:

> [T]he Re/Max parties had a legitimate financial interest in Parnell [the agent] potentially violating the agreement by inducing S&H's clients or potential clients to move their business from S&H to Re/Max. Thus, S&H's complaint failed to allege any facts, much less sufficient facts, to establish that the Re/Max parties were strangers to the agreement or business relationships underlying it.

*Parnell,* 364 Ga. App. at 216.

Defendant urges the Court to find that the situation here mirrors *Parnell*, and that Craig Johnson's alleged role should be viewed in the same way in which the Georgia Court of Appeals viewed Re/Max's role. Plaintiff objects that *Liberty* (not Craig Johnson) is the relevant comparator with Re/Max, and that it has not asserted this claim against Liberty. Plaintiff further argues that Craig Johnson lacked a legitimate financial interest in inducing the alleged breaches of Matthew Johnson's contract with DH Pace.

13

Defendants' point is well-taken, and a fully briefed dispositive motion may ultimately prove their interpretation correct. For now, however, given that this case is not on all fours with *Parnell*, the Court will permit the amendment in keeping with Rule 15's permissive standard. *See, e.g, Brown v. Wells Fargo Bank, N.A.,* No. 3:17-CV-00044-TCB, 2018 WL 10733378, *2 (N.D. Ga. Apr. 17, 2018) (concluding that that "the better course" is to allow the amended complaint and to address the legal sufficiency of the claims on a properly filed motion to dismiss).

### 3. Plaintiff Plausibly States a Claim of Breach of Fiduciary Duty Against Craig Johnson

Defendants argue that Plaintiff's proposed pleading fails to state a claim against Craig Johnson for aiding and abetting a breach of fiduciary duty. In Georgia, a claim for aiding and abetting a breach of fiduciary duty requires a showing of the following elements:

> (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Lucky Cap. Mgmt., LLC v. Miller & Martin, PLLC*, 762 F. App'x 719, 727 (11th Cir. 2019) (citing *Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19 (2006)).

Defendants argue that Plaintiff's claim for aiding and abetting against Craig Johnson is futile because of the competitor's privilege. But the Georgia Court of Appeals has held that the privilege of fair competition does not permit corporate officers to violate their fiduciary duties by recruiting company employees to work for a new business. *Gresham & Assocs., Inc. v. Strianese*, 265 Ga. App. 559, 562 (2004) ("[A] corporate employee owing fiduciary duties to the corporation is not a privileged competitor of the corporation."). The Court agrees that because Matthew Johnson cannot rely on the competitor's privilege to breach his fiduciary duties in recruiting Plaintiff's employees, Craig Johnson cannot use the privilege as a shield to the "aiding and abetting" claim. Defendants' remaining argument – that the proposed second amended complaint fails to establish wrongful acts and improper conduct by Craig Johnson – was considered and rejected above.

To summarize, Plaintiff's proposed second amended complaint "contain[s] sufficient factual matter, [if] accepted as true, 'to state a claim to relief that is plausible on its face'" such that it could potentially survive Rule 12(b)(6) scrutiny. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

15

570). Nothing in this order should be interpreted to prohibit Defendants from reasserting the arguments discussed herein at a later stage.

### B. Plaintiff's Request to Join Craig Johnson Under Rule 20

Rule 20 governs the permissive joinder of parties. Fed. R. Civ. P. 20. Under Rule 20(a)(2), "persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). As this district court has observed:

> The Supreme Court has instructed the lower courts to employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy: "Under the Rule, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."

*Wimby v. Outback Steakhouse Intl., L.P.*, 1:08-CV-0867-CAP-JFK, 2008 WL 11319916, at *3 (N.D. Ga. Oct. 3, 2008) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)).

Here, both elements of the Rule 20 test are satisfied. First, as required by Rule 20(a)(2)(A), Plaintiff's proposed claims against Craig Johnson are asserted against the existing Defendants jointly and arise out of the same operative facts underlying Plaintiff's claims against Matthew Johnson and

16

Liberty. Second, as required by Rule 20(a)(2)(B), Plaintiff's allegations against Craig Johnson are so closely intertwined with those brought against the other Defendants that common questions of law and fact can be expected to arise. The Rule 20 requirements are satisfied.

### C. Plaintiff's Motions to Dismiss Counterclaims

Plaintiff filed two motions to dismiss Defendants' counterclaims (Doc. 36, Doc. 63.) The first (Doc. 36) can be easily resolved. Plaintiff has since filed an amended complaint (Doc. 44) in response to which Defendants filed an answer and counterclaims. (Doc. 51.) Plaintiff then filed a second motion to dismiss counterclaims (Doc. 63), raising essentially the same arguments, but aimed at the now-operative answer. As such, the first motion to dismiss counterclaims (Doc. 36) is DENIED AS MOOT. Adjudication of the second motion to dismiss counterclaims (Doc. 63)[5] is HELD IN ABEYANCE pending

---

[5] As an aside, the Court has reviewed Defendants' counterclaims and is not inclined to accept Plaintiff's invitation to characterize them as "shotgun" pleadings. (Doc. 63.) Notwithstanding that Defendants re-alleged and adopted factual allegations contained in prior paragraphs of the pleading (Doc. 63-1 at 4), the counterclaims perform the essential task of providing Plaintiff with notice of the claims asserted and the factual basis for such claims. *Weiland v. Palm Beach County Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (internal citations omitted) (stating that a unifying characteristic of shotgun pleadings is that they "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). A third

the filing of the second amended complaint on the docket. *See, e.g., Concordia Pharms. Inc., S.À.R.L. v. Winder Lab'ys, LLC*, No. 2:16-CV-00004-RWS, 2017 WL 11630278, at *2 (N.D. Ga. Nov. 8, 2017) (denying as moot plaintiff's motion to dismiss counterclaims following approval of a motion to amend a complaint); *Automated Transaction Corp. v. Bill Me Later, Inc.*, No. 09-61903-CIV, 2010 WL 3419282, * 3, n.2 (S.D. Fla. Aug. 27, 2010) (stating that the filing of the third amended complaint would technically moot defendant's defenses and counterclaim).[6]

### D. Plaintiff's Request for Attorney's Fees Related to TRO

In Plaintiff's motion for a TRO, it sought an order "awarding DH Pace its reasonable attorneys' fees as set forth in the Confidentiality, Non-Compete, and Non-Solicitation Agreement between Johnson and DH Pace." (Doc. 2-1 at 24.) The Court granted in part Plaintiff's request for a TRO, but

---

motion raising the same argument against the same or similarly pled counterclaims would not likely be successful.

[6] *See also Pa. Nat. Mut. Cas. Ins. Co. v. Snider*, 996 F. Supp.2d 1173, 1180 n.8 (M.D. Ala. 2014) (finding counterclaim asserted in answer to original complaint was abandoned when defendant failed to plead or respond to amended complaint), *aff'd*, 607 F. App'x 879 (11th Cir. 2015); *T.U. Parks Constr. Co. v. Happy Valley Stables, Inc.*, No. 4:16-CV-0097-HLM, 2017 WL 4866265, at *5 (N.D. Ga. Sept. 14, 2017) (finding defendants abandoned counterclaim asserted in their answer to the complaint when they omitted it from their answers to the amended and second amended complaints).

18

it did not address the request for attorney's fees contained within it. Plaintiff's TRO briefing did not discuss attorney's fees or reference them other than as quoted above. There has been no argument presented as to why such fees should be awarded at this stage of the litigation. The motion is DENIED WITHOUT PREJUDICE.

## IV.  Conclusion

Plaintiff's motion for leave to amend (Doc. 98) is GRANTED. Plaintiff's first motion to dismiss counterclaims (Doc. 36) is DENIED AS MOOT and Plaintiff's second motion to dismiss counterclaims (Doc. 63) is HELD IN ABEYANCE pending the filing of the second amended complaint on the docket. Plaintiff's motion for attorney's fees made in connection with its TRO filing is DENIED WITHOUT PREJUDICE. The Clerk is DIRECTED to file the second amended complaint (Doc. 98-2) and exhibits thereto (Doc. 109) on the docket of the case.

**SO ORDERED** this 14th day of February, 2023.

SARAH E. GERAGHTY
United States District Judge